**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DEBORAH CLARK, | ) | |
| Parent and next friend of | ) | |
| A.C., a minor, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0439 (HHK) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| A municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
<u>**NEWLY SUBMITTED EVIDENCE**</u>

<u>**TABLE OF CONTENTS**</u>

| SECTION | | PAGE |
|---|---|---|
| Introduction | | 1 |
| Argument | | 2 |
| I.   Plaintiffs Are Not Entitled To A Grant of Summary Judgment Because The Plaintiffs' Motion Fails To Meet The Basic Requirement For A Summary Judgment Motion And Continues To Lack Sufficient Record Evidence. | | 2 |
| A.  Standard of review for summary judgment. | | 2 |
| B.  The Plaintiffs' statement of material facts cannot support a favorable decision on the record as a matter of law. | | 3 |
| II.  The Request For Fees For This Court Action Is Premature. | | 4 |
| III. The Plaintiffs Still Have Failed to Provide the Showings Necessary To Support An Award of Attorneys' Fees and Costs. | | 5 |
| A.  The Plaintiffs have not submitted record evidence that they are prevailing parties entitled to any fees or costs. | | 6 |

| SECTION | | PAGE |
|---|---|---|
| B. Even if prevailing party status is established, some charges are barred as a matter of law. | | 9 |
| 1. Plaintiff C.G. seeks fees for expert costs, which are not compensable under the IDEIA. | | 9 |
| 2. Plaintiffs have not justified attorneys' fees for IEP meetings and related activities, which are specifically barred by the IDEIA. | | 9 |
| C. The Plaintiffs fail to demonstrate the reasonableness of their counsel's hourly rate. | | 10 |
| 1. Pleading reliance on the Laffey Matrix does not satisfy the requirement to demonstrate the reasonableness of hourly rates. | | 12 |
| a. The Matrix relates to complex federal court litigation, not to IDEIA administrative litigation. | | 13 |
| b. The Matrix relates to complex civil litigation. | | 14 |
| 2. Even if the Matrix were deemed relevant, the Plaintiffs have not demonstrated its appropriate application here. | | 16 |
| 3. There is no adequate basis for retroactively granting the highest Matrix rates. | | 20 |
| 4. Publicly available data indicate that an hourly rate above $300 would be excessive. | | 21 |
| D. Plaintiffs have failed to demonstrate the reasonableness of many of their specific charges. | | 24 |
| 1. Plaintiffs have failed to demonstrate the reasonableness of quarter-hour billing. | | 25 |
| 2. Plaintiffs fail to demonstrate the reasonableness of "bi-weekly reviews," which are excessive and vague. | | 26 |
| 3. Clerical services and other non-professional services are not compensable at attorneys' rates. | | 26 |

| SECTION | | PAGE |
|---|---|---|
| 4.  Many charges are for activities too remote in time, or unrelated to, the proceeding on which the charges are based. | | 27 |
| 5.  Plaintiffs inappropriately seek fees for entries that are vague and lack specificity. | | 29 |
| 6.  Plaintiffs inappropriately bill for travel and waiting. | | 30 |
| IV. Summary of Reduction of Plaintiff's Fee Request | | 31 |
| V.  Payment of Any Fee Award is Subject to Statutory Fee Cap Limitations. | | 31 |
| Conclusion | | 32 |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEBORAH CLARK, ) | |
| Parent and next friend of ) | |
| A.C., a minor, <u>et al.</u>, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-0439 (HHK) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| A municipal corporation, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**<u>NEWLY SUBMITTED EVIDENCE</u>**

Subject to the Court's action on the Defendant's pending August 31 and

September 14, 2006, motions, the Defendant, by counsel, responds herein to the new

matters filed with the August 26, 2006, "Plaintiffs' Reply to Defendant's Opposition to

Plaintiffs' Motion for Summary Judgment Awarding Attorneys' Fees and Costs"

("Reply").

**<u>INTRODUCTION</u>**

This is an action under the Individuals with Disabilities Education Improvement

Act of 2004, 20 U.S.C. §§ 1400 <u>et seq.</u> ("IDEIA"), for attorneys' fees and costs.  The

case is an aggregation of 40 separate claims[1] by 26 different plaintiffs.  It is asserted that

each individual plaintiff was a "prevailing party" in an administrative proceeding under

IDEIA, and that reimbursement of related attorneys' fees and costs is required.

---

[1] In determining that there are 40 claims, the Defendant counted the number of Hearing Officer's Decisions and the Settlement Agreement for which the Plaintiffs seek fees.  The Defendant did not consider supplemental invoices to be separate claims.

In the aggregate, Plaintiffs here seek an award of more than $800,000 in attorneys' fees and costs.[2]  Moreover, the Plaintiffs further demand an award of more than $18,000 for attorneys' fees and costs in connection with this judicial proceeding to date.  For the reasons set forth below, the Plaintiffs' summary judgment motion ("Motion") must be denied.

Attached hereto as Defendant's Exhibit 1 is a summary of the Defendant's objections for each of the 26 Plaintiffs (addressing all 40 claims), which the Defendant will refer to throughout this pleading.  From those summaries, the Defendant also has prepared a chart, Defendant's Exhibit 2 hereto, which is a tabular summary of the individual claim objections in Exhibit 1, and which collects by category the reductions the Defendant believes must be made to the Plaintiffs' claims.

## ARGUMENT

I.    **Plaintiffs Are Not Entitled To A Grant of Summary Judgment Because The Plaintiffs' Motion Fails To Meet The Basic Requirement For A Summary Judgment Motion And Continues To Lack Sufficient Record Evidence.**

A.    **Standard of review for summary judgment.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the issue

---

[2] Plaintiffs' counsel has reduced his overall fee request to reflect DCPS payments; however, the Defendant here addresses the appropriateness of the entire fee request.  See Defendant's Exhibit 2, which includes the Plaintiffs' total fee request (by hours and by dollar amount) and costs.

must be supported by evidence sufficiently admissible that a reasonable trier of fact could

find for the nonmoving party; to be material, the factual assertion must be capable of

affecting the substantive outcome of the litigation.  See id.; see also Laningham v. U.S.

Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

     The District Court Local Civil Rules 7(h) and 56.1 both require that "[e]ach

motion for summary judgment shall be accompanied by a statement of material facts as to

which the moving party contends there is no genuine issue, which shall include

references to the parts of the record relied on to support the statement . . ."  As the Court

explained in Hundley v. District of Columbia, Civ. No. 02-0638 (D.D.C. October 19,

2004), slip op. at 3,

> [t]his requirement "isolates the facts that the parties assert
> are material, distinguishes disputed from undisputed facts,
> and identifies the pertinent parts of the record." Burke v.
> Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (citing Gardels
> v. CIA, 637 F.2d 770, 773 (D.C. Cir. 1980)).  Because the
> rules help promote efficient and correct judicial decision-
> making, the D.C. Circuit "has repeatedly upheld district
> court rulings that hold parties to strict compliance" with the
> local rules. Robertson v. American Airlines, Inc., 239 F.
> Supp. 2d 5, 8 (D.D.C. 2002) (citing Burke, 286 F.3d at 517;
> Jackson v. Finnegan, Henderson, Farabow, Garrett, &
> Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996); Gardels, 637
> F.2d at 773).

**B.**    **The Plaintiffs' statement of material facts cannot support
    a favorable decision on the record as a matter of law.**

     On its face, Plaintiffs' Statement of Material Facts ("Statement") does not meet

the requirements of Local Civil Rules 7(h) and 56.1, and summary judgment must be

denied for that reason alone.  Plaintiffs' Statement is just two pages long and lists only

seven "material facts" to support the 40 claims of the 26 Plaintiffs.  See Statement, at 24-

25.[3]  There is *not one specific fact* that addresses *any* of the individual claims.  See <u>id</u>.
Further, there is *not one reference* to the record.  See <u>id</u>.; see also LCvR 7(h) and 56.1.

While the Plaintiffs have supplemented the record with some documentation
relevant to the 40 claims, the Plaintiffs failed to put any of that information into their
Statement or their Motion (except for general, sweeping statements about the Plaintiffs as
a group).  The Plaintiffs merely mention in passing administrative victories (which still
are not part of the record in this case) and billing invoices.  Statement, at 24-25.

By virtue of their insufficient Statement alone, the Plaintiffs fail to meet their
burden to establish all elements of the requested fee award (see below section for a
detailed explanation of this standard).[4]  Their Motion, too, fails to demonstrate that they
are entitled to a judgment as a matter of law, again because it does not allege specific
facts in support of their legal position.  Thus, this Court should deny the Plaintiffs'
Motion for failing to show that they should prevail as a matter of law.  See Fed. R. Civ.
Pro. 56; see also LCvR 7(h) and 56.1.

## II.    The Request For Fees For This Court Action Is Premature

As the Defendant noted in Its August 17, 2006, Opposition to Plaintiffs' Motion
for Summary Judgment ("Opposition"), the Motion includes a request that the Court now
make an award of some $18,000.00 for attorneys' fees and costs in connection with this

---

[3] The Plaintiffs' filings are not page-numbered.  Thus, the Defendant will use the e-file docket pagination
when citing those filings.

[4] As noted in the Defendant's Opposition, Plaintiffs' Statement is so general and so deficient that the
Defendant is unable to address Statements 1-5.  The Defendant does not dispute Statement 6 regarding
plaintiffs' counsel's twenty years of experience.  With regard to Statement 7, the Defendant does not
dispute that $425.00 per hour is currently the *highest* rate for an attorney with more than 20 years of
experience that appears on the Laffey Matrix.

pending court proceeding to date; details are purportedly provided as Attachment Two to the Motion.  Defendant's Opposition, at 2.  That request, however, is at best premature.

As shown below, the underlying requests for administrative fees and costs are patently defective at this time, and it is hardly a reasonable assumption that the Plaintiffs will prevail in this case.  Moreover, as recently observed by Judge Collyer in <u>Cummings v. District of Columbia</u>, Civ. No. 04-1426 (D.D.C., July 13, 2006), slip op. at 4:

> Without a final appealable order on the merits [of the complaint], Plaintiffs' request for attorney's fees is premature. . . . [When a final order is issued], counsel for the Plaintiffs will be able to submit an application for attorney's fees, which Defendants might accept or challenge.

At the conclusion of this case, if the Plaintiffs prevail, the Defendant then will review the sufficiency of their invoice, and the Court may then appropriately act.

## III.    The Plaintiffs Still Have Failed to Provide the Showings Necessary To Support An Award of Attorneys' Fees and Costs.

Under the IDEIA, the Court is empowered to exercise its discretion in determining the amount of attorneys' fee awards.  However, the Plaintiffs bear the burden of establishing all elements of the requested fee award, including an entitlement to the award, the documentation of appropriate hours and justification of the reasonableness of the rates.  See <u>Blum v. Stenson</u>, 465 U.S. 866, 896 n. 11 (1984); <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>Covington v. District of Columbia</u>, 57 F.3d 1101, 1107 (D.C. Cir. 1995), <u>cert. denied</u>, 516 U.S. 1115 (1996); <u>Smith v. District of Columbia</u>, Civ. No. 02-0373 (D.D.C.), Memorandum Opinion issued June 24, 2003, at 8-9.  "The prevailing party shoulders the burden to provide the Court with sufficient evidence to justify its request." <u>Smith v. Roher</u>, 954 F. Supp. 359, 365 (D.D.C. 1997) (citing <u>In re North</u>, 303

5

U.S. App. D.C. 443, 8 F.3rd 852 (1993)).  "Supporting documentation 'must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and *reasonably expended…*'." In re Olson, 280 U.S. App. D.C. 205, 884 F.2d 1415, 1428 (1989) (quoting United Slate, Tile & Composition v. G&M Roofing, 732 F.2d 495, 502, n. 2 (6th Cir. 1984)) (emphasis in original).  And the Court must exclude from the fee award any hours that were not "reasonably expended." Smith v. Roher, supra, 954 F. Supp. at 365 (citing Hensley v. Eckerhart, supra, 461 U.S. at 434).

### A.    The Plaintiffs have not submitted record evidence that they are prevailing parties entitled to any fees or costs.

Where, as here, there are a series of individual fee claims, plaintiffs must establish, by evidence, an entitlement to fees in each individual instance of representation.  In the present case, the Plaintiffs have not submitted to this Court *any* of the administrative decisions necessary to establish prevailing party status in *any* individual circumstance.[5]  Without these documents, the Court simply has no evidence of record on which to base a determination of prevailing party status and, thus, of an entitlement to any fees.

Further, it is well established that fee requests may be reduced based on the degree of success that the requesting party has achieved.  In Hensley v. Eckerhart**,** supra, 461 U.S. at 440, the Supreme Court stated:

> We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the

---

[5] With a few exceptions, the Plaintiffs' counsel did not provide the undersigned counsel with these decisions informally either.

> unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

This principle has been followed consistently in this jurisdiction.  See Thomas v. National Football League Players Assn, 273 F.3d 1124, 1128-29 (D.C. Cir. 2001); F.J. 2 Volmer Co., Inc. v. Magaw, 102 F.3d 591, 599-600 (D.C. Cir. 1996).  Further, this principle specifically has been applied to fee claims under the IDEIA.  See Lopez v. District of Columbia, 383 F. Supp. 2d 18, 22-23 (D.D.C. 2005) (fees not awarded for an unsuccessful claim, but fees awarded for a separate, successful claim); McDowell v. District of Columbia, Civ. No. 00-0594, 2001 U.S. Dist. LEXIS 8114 (D.D.C. 2001) (fees reduced by one third in light of partial success); Gaskins v. District of Columbia, Civ. No. 00-0592 (D.D.C. June 4, 2001), slip op. at 10-13 (same).

Without reviewing each administrative due process hearing—or hearing officer's decision ("HOD"), as it is typically referred to—it is impossible for this Court to determine the degree of success (if any) that each plaintiff achieved when considering respective fee requests.

Furthermore, despite the Plaintiffs' protests to the contrary, a review of each HOD is necessary for a determination of the reasonableness of the time and efforts expended, as well as the types of services.  For example, many of the Plaintiffs seek attorneys' fees for their counsel's participation at Individualized Education Program ("IEPs") meetings. See, for example, Reply, at 22, J.B.'s Invoice.  Under normal circumstances, such

meetings are not compensable pursuant to the IDEIA; however, where a Hearing Officer

has ordered that Plaintiffs' counsel attend the meeting, fees may be appropriate.[6]  20

U.S.C. § 1415(i)(3)(D)(ii).

In lieu of documentation, however, the Motion simply asserts that all plaintiffs

"prevailed and obtained relief . . . in administrative hearings." Motion, at 2.  While

reference is made to "various Hearing Officer's Determinations (HODs) issued as the

result of administrative hearings held before the District of Columbia Public Schools

(DCPS) Student Hearing Office," no such documents appear in this record.  Id. at 1.  And

while paragraph 1 of the Statement similarly asserts that the "plaintiffs prevailed . . . in

administrative hearings," it does not, as required by LCvR 56.1, "include references to

the parts of the record relied on to support the statement."  Because there is no such

evidence, the Plaintiffs' Motion fails.

Worthy of note in this regard, in at least one instance, what *does* appear in the

record demonstrates that the individual plaintiff—M.J.—is not a prevailing party.  M.J. is

conceded to be based on a settlement agreement ("SA").  Motion at 8.  However,

plaintiffs are not considered to be prevailing parties entitled to attorneys' fees and costs

based on settlement agreements.  Alegria v. District of Columbia,  391 F.3d 262 (D.C.

Cir. 2004) (applying Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &

Human Res., 532 U.S. 598 (2000), to IDEIA claims for fees and thus rejecting the

plaintiffs request for fees for private settlement agreements).  Thus, this claim must be

dismissed.

---

[6] Other examples of how HODs are absolutely essential for this Court's review of the reasonableness of the fees requested are the invoices for J.W. and S.W.  Reply, at 344-357.  Those invoices are for siblings who had hearings on the same day.  Id. The invoices are virtually identical.  Without further information, it is impossible to assess, for example, whether those cases were intertwined or similar, and the extent to which activities attributed separately to each may be duplicative and thus not compensable.

**B.**    **Even if prevailing party status is established,**
**some charges are barred as a matter of law.**

**1.**    **Plaintiff C.G. seek fees for expert costs,**
**which are not compensable under the IDEIA.**

Under the costs section of plaintiff C.G.'s invoice, Plaintiff C.G. seeks $150.00

for "expert witness fees" for Alice Coleman.  Plaintiffs' Reply, at 101.  The Supreme

Court has held that the IDEIA does not authorize prevailing parties to recover fees for

services rendered by experts in IDEIA actions.  Arlington Cent. Sch. Dist. Bd. of Educ. v.

Murphy, 126 S. Ct. 2455 (2006); Goldring v. District of Columbia, 416 F.3d 70 (D.C.

Cir. 2005), cert. denied, 126 S. Ct. 2985 (2006).  Thus, this amount may not be included

in any overall award.

**2.**    **Plaintiffs have not justified attorneys' fees**
**for IEP meetings and related activities,**
**which are specifically barred by the IDEIA.**

The IDEIA specifically bars reimbursement for attorneys' fees "relating to any

meeting of the IEP Team unless such meeting is convened as a result of an administrative

proceeding or judicial action, or, at the discretion of the State, for a mediation described

in subsection (e)."  20 U.S.C. § 1415(i)(3)(D)(ii).  As stated in Bradley v. District of

Columbia, Civ. No. 99-3188 (D.D.C. October 9, 2001), slip op. at 16, for example:

> The Court will also disallow attorneys' fees relating to any meeting of the IEP
> team . . . and fees attributable to counsel's attendance at an "intake interview" at
> Chelsea School . . . . See 20 U.S.C. Section 1415(D)(ii)("[a]ttorneys' fees may not
> be awarded relating any meeting of the IEP Team. . . .").

And see Leslie E. v. Bethlehem Central Sch. Dist., 652 N.Y.S.2d 891 (N.Y.Sup.Ct.

1997).  See also Kletzelman v. Capistrano Unified Sch. Dist., 91 F.3d 68 (9th Cir. 1995).

However, the invoices submitted include extensive charges for IEP meetings and

related activities.  See Defendant's Exhibit 2.  Given that the Plaintiffs have not

9

submitted any HODs, it is not possible to determine whether the IEP meetings were HOD-ordered or not.[7]  Moreover, it should be noted that in some cases, what is clear is that the Plaintiffs seek fees for IEP meetings that are not temporally close to any HOD. As the Plaintiffs carry the burden of demonstrating entitlement to, and reasonableness of, their fee requests, their submissions clearly fail to meet that burden.[8]

In total, the Plaintiffs have unreasonably billed 111.5 hours of fees for IEP meetings and related activities, which amounts to $47,387.50, and the overall fee request should be reduced by that amount. See Defendant's Exhibit 2; see also Defendant's Exhibit 1 for a student-by student breakdown of such fees.

### C.    The Plaintiffs fail to demonstrate the reasonableness of their counsel's hourly rate.

Assuming that Plaintiffs establish an entitlement to any attorneys' fees as prevailing parties under IDEIA, Shaw v. District of Columbia, 238 F. Supp. 2d 127 (D.D.C. 2002), they carry the burden of demonstrating the reasonableness of the amount requested.  A court must assess an appropriate fee by calculating the "number of hours *reasonably expended* on the litigation multiplied by a *reasonable hourly rate*."  Hensley v. Eckerhart, supra, 461 U.S. at 433 (emphasis added).

As to the latter, the fee applicant must demonstrate the reasonableness of the hourly rates utilized.  See Blum v. Stenson, supra, 465 U.S. at 896 n. 11; Hensley v.

---

[7] For a few of the claims, the Plaintiffs' counsel provided the undersigned counsel with HODs informally. Although those HODs are not before this Court, in reviewing the reasonableness of those fee requests, the undersigned counsel did not here challenge fees for IEP meetings that were clearly HOD-ordered.  Thus, within the individual dispute sheets, the Defendant did not flag those IEPs as possible reductions.  See Defendant's Exhibit 1.

[8] Plaintiffs' counsel was aware of the prohibition of such fees, having added a caveat to his invoices which states, "Plaintiffs' counsel requests DCPS to delete any time entries for IEP meetings not ordered as the result of a settlement agreement or hearing officer's determination."  See, e.g., Reply at 11, 21, 27, 34, 40. The hope, it might be speculated, was that DCPS would not catch all inappropriate charges.

Eckerhart, supra, 461 U.S. at 437; Covington v. District of Columbia, supra, 57 F.3d at

1107.  To do so, he must show at least three elements: (1) the attorney's billing practices;

(2) the attorney's skill and/or reputation; and (3) the prevailing market rates in the

relevant community.  See Blum, 465 U.S. at 896; Covington, 57 F.3d at 1107.  See also

National Ass'n of Concerned Veterans v. Dep't of Commerce, 675 F.2d 1319, 1325-26

(D.C. Cir. 1982):

> An applicant is required to provide specific evidence of the prevailing community
> rate for the type of work for which he seeks an award. For example, affidavits
> reciting the precise fees that attorneys with similar qualifications have received
> from fee-paying clients in comparable cases provide prevailing community rate
> information. . . .   Recent fees awarded by the courts or through settlement to
> attorneys of comparable reputation and experience performing similar work are
> also useful guides in setting an appropriate rate.
>
>      In addition, counsel for applicants should submit specific evidence of his
> or her actual billing practice during the relevant time period. . .  [T]he level of
> skill necessary to conduct the case and the attorney's reputation . . . , of course, are
> also factors that tend to determine the rate that the attorney is able to command in
> the marketplace for similar work. Accordingly, the actual rate that applicant's
> counsel can command in the market is itself highly relevant proof of the
> prevailing community rate.
>
>      . . .  A fee applicant should be required to state the rate at which he
> actually billed his time in other cases during the period he was performing the
> services for which he seeks compensation from defendant. This rate is not what he
> would have liked to receive, or what the client paid in a single fortunate case, but
> what on average counsel has in fact received. It is obvious that where counsel
> customarily exercises billing judgment by not billing for the full amount of time
> expended this fact must be considered in calculating counsel's true billing rate.
> Unless the applicant wishes the District Court to assume that applicant's
> individual rate claimed includes an allowance for the contingent nature of the suit,
> the applicant should supply data showing fees earned both in cases in which
> counsel prevailed and in which he lost. [Footnotes and citations omitted.]

Here, the Plaintiffs have failed to meet their burden.  There is no "specific

evidence of [Mr. Drake's] actual billing practice during the relevant time period."

There is no evidence of what Mr. Drake specified in his retainer agreement with his

plaintiff-clients.  There is no evidence of what Mr. Drake charged any other clients during the periods in question.  There are no affidavits attesting to the actual rates charged by lawyers who do similar work, the nature or complexity of IDEIA work, or the reputation of the Plaintiffs' counsel.  Motion, at 20-22.  No one attests separately to the work of Plaintiffs' counsel, or to having observed him in court or at an administrative hearing under IDEIA.  Other than the Plaintiffs' pleading narrations, there is simply no support for the rate claimed.  Id.

          **1.**      **Pleading reliance on the Laffey Matrix does
not satisfy the requirement to demonstrate
the reasonableness of hourly rates.**

The Laffey Matrix (hereinafter "Matrix") – now a tabulation periodically updated by the United States Attorney's Office for the District of Columbia showing prevailing attorneys' hourly rates for complex federal litigation in the District of Columbia – grew out of the court's decision in <u>Laffey v. Northwest Airlines</u>, 572 F. Supp. 354 (D.D.C. 1983), <u>aff'd in part, rev'd in part on other grounds</u>, 74 F.2d 4 (D.C.Cir. 1984), <u>cert. denied</u>, 472 U.S. 1021 (1985), as modified by <u>Save Our Cumberland Mountains, Inc. v. Hodel</u>, 857 F.2d 1516, 1524 (D.C.Cir. 1988) ("<u>SOCM</u>").  "The matrix creates one axis for a lawyer's years of experience in complicated federal litigation and a second for rates of compensation."  <u>Griffin v. Wash. Convention Ctr.</u>, 172 F. Supp. 2d 193, 197 (D.D.C. 2001).[9] A copy of the current Matrix is attached for the Court's convenience as

---

[9] The Matrix divides attorneys into five groups based on their years in complex civil litigation practice – junior associates, l-3 years experience; senior associates, 4-7 years experience; experienced federal litigators, 8-10 years experience; experienced federal litigators, 11-19 years experience; and very experienced federal litigators, 20+ years experience – and assigns each group an hourly market rate. The "updated matrix" (also the "Matrix"), reflects the rates for subsequent years by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5.00.

Defendant's Exhibit 3.[10]

The Matrix, however, is not ipso facto determinative of the proper hourly rate in this case, and simply its citation does not provide the required support for the hourly rate claimed.

### a.    The Matrix relates to complex federal court litigation, not to IDEIA administrative litigation.

At its inception, the Matrix was intended and designed for representation in federal civil litigation, not administrative proceedings.  The Laffey case itself involved "complex employment discrimination litigation." 572 F. Supp. at 374.  On its face, the Matrix includes an explanation of two categories making that clear: the 11-19 years category applies to "experienced federal court litigators," and the 20+ years category applies to "very experienced federal court litigators."  Defendant's Exhibit 3, at Matrix Explanatory Note 2.  And if doubts about the fact that the Matrix was focused on rates for federal court litigation existed, they were resolved in Covington v. District of Columbia, 57 F.3d 1101 (D.C. Cir. 1995) – a decision involving "the prevailing market rates for complex federal litigation in the District of Columbia," id. at 1103, and stating that, under the SOCM decision, attorneys "have to state their *federal court experience* in order to get Laffey rates." 57 F.3d at 1108 n. 17 (emphasis added).  And see id. at 1110 (petitioners' burden to justify its rates was met where they "submitted data demonstrating their

---

[10] In determining a proper hourly fee, the Court in Laffey required a consideration of the prevailing rates in the relevant legal market, including the type of work performed.   The Court relied on affidavits attesting to the attorneys experience and expertise and the hourly rates of comparable lawyers as evidence of the prevailing rates.  "[T]he court finds that the relevant legal market in this action is complex employment discrimination litigation and that this market is subject to the same hourly rates that prevail in other complex litigation." Laffey v. Northwest Airlines, 572 F. Supp. 354, 374.  "The court reiterates that the appropriate benchmark for a fee award is the prevailing rate for "the type of work for which [the fee applicant] seeks an award." Id.

attorneys' experience in the legal profession and *in litigating complex federal court cases*" (emphasis added)).

Even within the universe of "complex federal litigation," of course, the <u>Laffey</u> court noted that the Matrix was developed to reflect rates charged by attorneys with "exceptional" experience, expertise and reputations – attorneys with "prominence and ability" that practiced in "premier" firms. <u>Laffey</u>, 572 F. Supp. at 372. IDEIA administrative litigation is, by definition, not federal civil litigation, and the Matrix rates may not be assumed applicable to such administrative representation.

### b.  <u>The Matrix relates to complex civil litigation.</u>

Not only is IDEIA administrative litigation not federal court litigation, the character of the services involved in IDEIA administrative litigation is anything but "complex" or "complicated," as contemplated by the Matrix, witness the attached declaration of DCPS Office of the General Counsel ("OGC") Acting Supervisory Attorney Quinne Lindsey-Harris. See Defendant's Exhibit 4, Declaration of Ms. Lindsey-Harris, dated September 13, 2006. While working at DCPS OGC, Ms. Lindsey-Harris has had the opportunity to litigate and/or supervise the litigation of, hundreds of due process hearings held pursuant to the IDEIA in the District—exactly the kind of hearings at issue in this case. <u>Id.</u> at 1-2.

According to Ms. Lindsey-Harris (and as confirmed in the administrative records filed in the numerous HOD appeals filed annually in this Court), legal representation in IDEIA due process hearings entails (1) the filing of a request for hearing (in large part, the filling in of a form, <u>id.</u> at Attachment A, Complaint Form), (2) possible participation in a resolution session (in which the parties attempt to resolve the Complaint prior to a

hearing), (3) the submission of a notice to the opposing party five days in advance of the hearing which transmits a copy of all documents intended to be introduced at hearing, and identifies any witnesses intended to be called for testimony, and (4) a hearing (typically, perhaps two hours long) where documents are introduced and testimony given, at the conclusion of which the matter is taken under advisement by the administrative Hearing Officer.  Id. at 2. [11]  There is no prehearing discovery process, no difficult expert qualifying processes, no briefings of intricate statutory or constitutional issues, no pre-trial briefings, no lengthy hearings, no protracted oral arguments, and usually no motions filed. Id.; compare Covington v. District of Columbia, supra, 57 F. 3d at 1106, where the District Court (839 F. Supp. at 894) had noted that "[p]laintiffs' counsel handled very well this complicated federal case, which involved the constitutional claims of ten plaintiffs against sixteen defendants, lengthy discovery, many motions and a jury trial."[12]

Although IDEIA administrative hearings are undeniably important, they simply are not complicated.  And nothing in Plaintiffs' Motion suggests otherwise.  See Motion, at 20-22, and generally.

---

[11] Indeed, in Thomas v. District of Columbia, Civ. No. 03-1791 (D.D.C.) (another case in which the same counsel sought fees), the May 28, 2003, administrative hearing there at issue only lasted 1.75 hours (including waiting time), and had only one witness, the parent, to whom Mr. Drake posed only two questions: "State your name" and "How long have you been attempting to get services for Alan?"  See "Defendant's Response to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Payment of Attorney's Fees and Costs for Court Proceedings," dated August 25, 2006, at 24 (citing the transcript at 25).

[12] See also Role Models America, Inc. v. Brownlee, 353 F.3d 962, 969 (D.C. Cir. 2004), where the Circuit Court found no basis for exceeding a statutory fee cap based on "special factors,"  finding "nothing particularly 'complex" about this appeal," which involved "just the type of garden-variety administrative law matter that large Washington law firms handle routinely."

## 2. Even if the Matrix were deemed relevant, the Plaintiffs have not demonstrated its appropriate application here.

Even when applying the Matrix in its proper context, a court must evaluate the propriety of applying the rates therein, taking into account the characteristics of both the litigation and the attorney involved. Counsel are not, as seems to be assumed here, guaranteed the Matrix rates simply by reciting years in practice (of whatever sort) and pointing to the Matrix. And the mere fact of an attorney's longevity at the bar is not conclusive. See, e.g., Griffen v. Washington Convention Center, 172 F.Supp.2d 193, 199 (D.D.C. 2001):

> There is nothing automatic about the application of "Laffey" rates. They are not like a GS schedule where government employees advance to the next step by virtue of time in grade. Instead, they attempt to reflect what the market will pay with the understanding that the market will pay more for lawyers who are experienced in complicated federal litigation.
>
> Rather, the individual experience and capabilities of the individual attorneys are

evaluated,[13] and the complexity of the particular litigation for which fees are

---

[13] In the Laffey case itself, the Court refused to apply the Matrix mechanically, reducing the Matrix rates by one-third in awarding fees to one attorney in the case, even though it expressed no dissatisfaction with his performance:

> Because Feldman graduated from law school 19 years prior to the trial, Plaintiffs request an award of $ 150 per hour for his time. The Court has reviewed Feldman's resume . . . and concludes that it does not reflect that level of superior achievement, expertise, skill and/or reputation that justifies the hourly rates awarded Plaintiffs' retained counsel. This Court cannot assume that these qualities are a natural function of the passage of time following law school graduation.

Laffey, 572 F.Supp. at 375.

sought,[14] must nonetheless be assessed before determining the Matrix rates to be appropriate. Indeed, even prior cases that have referred to the Matrix in connection with IDEIA attorneys' fees have noted that the Matrix is a reference point at best, and not an absolute or conclusive determinant.[15]

---

[14] See, e.g., Muldrow v. Re-Direct, Inc., 397 F. Supp. 2d 1, 4 (D.D.C. 2005), refusing to award the Laffey rates for a civil negligence case:

> [U]se of the Laffey matrix as a measure of appropriate fees for complex federal litigation has gained acceptance in this Circuit. See, e.g., Salazar, 123 F. Supp. 2d at 13. n4. However, a more troubling issue is whether these extreme high-end fees should apply in what is in essence a relatively straightforward negligence suit. Although plaintiff brought a § 1983 claim, as defendant points out (Opp'n at 3), plaintiff presented essentially the same evidence in support of her § 1983 and negligence claims. Furthermore, the case involved a single plaintiff and a single defendant; there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues. These factors all distinguish this lawsuit from the type of case in which Laffey fees are typically awarded. For example, the attorneys in Covington brought a § 1983 action on behalf of ten prison inmates who were beaten while shackled and handcuffed and nine inmates who were sent to a maximum security facility. 57 F.3d at 1103. Salazar concerned a class action which proceeded on three tracks simultaneously, requiring attorneys to monitor compliance with a remedial order, respond to an appeal and file a cross-appeal, and engage in extensive settlement negotiations which required the redrafting of remedial order. 123 F. Supp. 2d at 15-16. In short, plaintiff's attorneys have not successfully demonstrated "the complexity of the case they handled" as required under Covington. 57 F.3d at 1108. See also Salazar, 123 F. Supp. 2d at 12; Griffin v. Wash. Convention Ctr., 172 F. Supp. 2d 193, 202 (D.D.C. 2001) (reducing fees below those calculated using the Laffey rates in part because "once [the] appeal was completed, the resulting case was a simple Title VII action involving a handful of witness on each side and a short trial.").

[15] See, e.g., Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999).

> In order to determine the prevailing market rates in the relevant community, . . . the Court will use as a point of reference the updated Laffey fee matrix prepared by the United States Attorney's Office. . . See Covington v. District of Columbia, 57 F.3d at 1109 ("Although fee matrices are somewhat crude . . [they] do provide a useful starting point").

The Defendants acknowledge that the Blackman decision, cited in the Matrix Explanatory Notes, as well as some more recent District Court decisions, have referenced the Matrix in IDEIA attorneys' fee litigation. However, neither the Blackman ruling, nor subsequent decisions referring to the Matrix, have analytically addressed the propriety of applying the Matrix, instead essentially assuming its applicability. With respect, and for the reasons set forth herein, the Defendants believe the summary employment of the Matrix in those cases to have been in error. Moreover, portions of the Blackman decision, applied here, suggest that notwithstanding the existence of the Matrix, the rates actually employed by DCPS in paying Plaintiffs' counsel's fees in the past should govern:

> If plaintiffs' counsel has not previously been compensated by the District for prevailing in an administrative due process hearing, then plaintiffs have the burden of establishing that the hourly rate charged is comparable to the amount paid to other attorneys of comparable experience for prevailing in IDEA cases.

59 F. Supp. 2d at 43. As shown in the attachments, DCPS currently believes the proper rate for Plaintiffs' counsel to be, at best, $300. See Defendant's Exhibit 4, generally and at Attachment C.

The existence of the Matrix, therefore, does not obviate the need for the showings described in <u>Covington v. District of Columbia</u>, <u>supra</u>, 57 F.3d at 1107:

> [A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: [1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community.

Plainly those showings have not been made here.  As to the first element – the attorney's billing practices – there is no information whatever in this case.  There is no description or other evidence setting forth counsel's normal billing practices (including hourly rates charged) for clients who do posses the ability to pay.  Indeed, there is no indication what actual rate Mr. Drake specified in his retainer arrangement with the Plaintiffs here.  To that extent, the Court has no basis for a determination regarding whether Plaintiffs' counsel can command the type of rates set forth in the Matrix.  The fee request therefore fails to satisfy this first <u>Covington</u> element.

As to the second <u>Covington</u> element, the Plaintiffs

> must offer evidence to demonstrate their attorneys' experience, skill, reputation, and the complexity of the case they handled.  In articulating the plaintiffs' burden in these cases, the Supreme Court required that fee applicants "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Blum</u>, 465 U.S. at 896 n. 11. . . .

57 F.3d at 1108.  Here again, the Plaintiffs fail to make such a demonstration.  Plaintiffs' counsel submits no information about the complexity of the 40 subject administrative hearings for which he seeks fees.  See Motion, at 20-22.  He also provides no information about his reputation in the community, except for the pleading narrative.  <u>Id.</u>

The summary assertions in the Motion stand in stark contrast to the fee petition approved in <u>Covington</u> itself.  There, the fee application included specific information

pertaining to all of the attorneys' experience, skill, and reputation.  The petition gave detailed account of the extensive civil rights case experience of each of the attorneys.[16]  It was this detailed evidentiary showing that enabled the trial court to find it reasonable to grant counsel an hourly rate at the highest level of the <u>Laffey</u> matrix.

The third <u>Covington</u> element is equally unsatisfied here.  While the <u>Laffey</u> court held that an updated Matrix demonstrated the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation, 57 F.3d at 1109, the Court had sufficient evidence to establish that the counsel there involved indeed were of comparable skill, experience and reputation.  As discussed above, however, Plaintiffs have not provided the Court with sufficient evidence that their counsel possesses a level of experience and skill, or an adequate reputation, to enable a conclusion that his qualifications are comparable to attorneys that have traditionally been awarded Matrix rates.

In sum, the Plaintiffs have requested the Court to grant their counsel an hourly rate at the highest Matrix rate without documenting the reasonableness of granting such an elevated rate. Under such circumstances, the Court should deny the request because Plaintiffs have simply not met their burden of proof.

---

[16] The Court stated:

> Gaffney's and Schember's declarations each recount their significant experience since 1975, at the Lawyers Committee for Civil Rights Under Law, and since 1977, at their own firm, practicing federal court litigation on a variety of issues.  Their declarations also provide indications of their reputations, listing teaching positions and fellowships, awards received, participation in congressionally mandated studies, and chairing the D.C. Bar's Committee on Military and Veterans Rights. <u>Covington,</u>

57 F.3d at 1104 (footnotes excluded); see <u>id.,</u> n. 3, 4, 5, 6, 7, 8.

**3.    There is no adequate basis for retroactively
granting the highest Matrix rates.**

The Plaintiffs' counsel here seeks approval for the most recently increased levels of the Matrix's highest rates.  See Defendant's Exhibit 3.  While there have been instances where courts have permitted retroactive application of current Matrix rates for legal work performed in previous years, this remedy has been applied only to compensate a prevailing party for a long delay in payment.  See Mudrow v. Re-Direct, Inc., 397 F. Supp. 2d 1, 4 n 4.  That simply is not the case here, where DCPS has paid almost all of the 40 claims up to the amount allowed by the applicable fee cap (see below section), and where all the proceedings took place within the past three years.  See Reply, at 9-369.

In this matter, there has been no such delay in payment to justify application of current market rates to services performed in prior years.[17]  Indeed, the Plaintiffs' insistence on the newest, highest Matrix rate, effective July 1, 2006, is particularly presumptuous here.  This action was filed on March 10, 2006.  Yet many of the HODs on which the fee claims are based were issued *two to three years earlier*.  See, e.g., claims of J.B. (33 months), J.M.B. (35 months), C.G. (29 and 35 months), R.G. (36 months), K.J. (27 months), M.J. (24 months), M.R. (28 and 33 months).  Acceding to the Plaintiffs' demand for the highest current rate would simply reward the Plaintiffs' delay in seeking fees from this Court.  If the delay was inadvertent, the Court should not reward a lack of diligence.  If the delay was to provide a basis for claiming a higher Matrix hourly rate, the Court should not condone such timing manipulations.

---

[17] In fact, DCPS has paid up to the applicable fee cap—the only amount DCPS is authorized by Congress to pay—in most of the 40 claims.  See below section for applicable fee cap.

In at least one prior case involving the Plaintiffs' counsel, the Court rejected counsel's similar effort to summarily to increase rates, and to apply them retroactively. Bradley v. District of Columbia, Civ. No. 99-3188 (D.D.C., October 9, 2001), slip op. at 13-14. The Court should so act here.

### 4.    Publicly available data indicate that an hourly rate above $300 would be excessive.

There is public data that indicates what hourly rates have been for others engaged in IDEIA practice.  In cases involving other attorneys who have as great or greater seniority than Mr. Drake in special education matters, hourly rates approved in court proceedings have varied from $285.00 per hour to $375.00 per hour in 2005: in 2005, Karen Alvarez – D.C. Bar 1990 -- $285.00;[18] in 2005, Elizabeth Jester – 1980 graduate of Catholic University School of Law -- $300.00;[19] in 2005, Tilman Gerald – 1975 graduate of Howard University School of Law -- $375.00.00;[20] in 2004, Michael Eig – D.C. Bar 1975 – $300.00;[21] and in 2004, Matthew Bogin – D.C. Bar 1975 -- $325.00.[22]

At the same time, however, precisely the same kind of IDEIA administrative practice as that here involved has been rendered by more junior lawyers, with at least equal success, at significantly lesser rates.  For example, Ms. Haylie Iseman, admitted to

---

[18] Mayen v. District of Columbia, Civ. No. 02-1632 (D.D.C.) (Declaration of Karen Alvarez, filed March 28, 2005).

[19] Argueta v. District of Columbia, Civ. No. 04-0260 (D.D.C.) (Affidavit of Elizabeth Jester, filed March 22, 2005).

[20] District of Columbia. v. Ramirez, Civ. No. 04-775 (D.D.C.) (Statement of Service of Tilman Gerald, filed July 15, 2005); Kingsberry v. District of Columbia, Civ. No. 03-2378 (D.D.C.) (Declaration of Tilman Gerald, filed February 22, 2005).

[21] Goldring v. District of Columbia, Civ. No. 02-1761 (D.D.C.) (Declaration of Michael Eig dated January 30, 2004).

[22] Goldring v. District of Columbia, Civ. No. 02-1761 (D.D.C.) (Declaration of Michael Eig dated January 30, 2004).

the D.C. Bar in 2001, has been awarded $200.00 per hour.  <u>Goldring v. District of Columbia</u>, Civ. No. 02-1761 (D.D.C. June 26, 2004); <u>Smith v. District of Columbia</u>, Civ. No. 02-0373 (D.D.C. 2005).

What DCPS is actually paying Mr. Drake and other attorneys for the kinds of practice activities at issue here may also be relevant.  Attached, for example, is a letter to Mr. Drake from DCPS dated August 8, 2006, which clearly states that "the median rates presented to DCPS for payment of fees for [IDEIA] is approximately $220.00." Defendant's Exhibit 4, at Attachment C.  The letter further states that DCPS will pay Mr. Drake at the rate of $300.00 per hour.  <u>Id</u>.  Defendant further attaches copies of letters sent to five other attorneys who, like Mr. Drake, represent school children who have allegedly been denied a FAPE.  These letters indicate that those attorneys are being paid between $200.00 and $270.00 per hour.  <u>Id</u>.

In addition to supervising attorneys, Ms. Lindsey-Harris is also responsible for the final legal review of all attorney fee invoices submitted to DCPS for attorney work on administrative due process hearings pursuant to the IDEIA.  Exhibit 4, at 2 and Attachment B, DCPS Guidelines for the Payment of Attorneys' Fees in IDEA Matter. DCPS, through Ms. Lindsey-Harris, receives about 135 such fee invoices per month.  <u>Id</u>. at 2.  From September 2005 to the present (September 12, 2006), DCPS has received 1,600 invoices.  For Fiscal Year 2006, DCPS has paid 1.6 million dollars in individual invoices, and 3.5 million dollars in settlements regarding fee requests.  <u>Id</u>.

Because of the broad range of rates billed by attorneys who handle IDEIA cases, Ms. Lindsey-Harris has been reviewing attorney fee rates to ensure that attorneys with similar experiences are charging similar rates.  <u>Id</u>.  Over the past year, while reviewing

invoices,[23] she has noted the following patterns: (1) Attorneys possessing 10 to 20 years of experience currently invoice their rate within the range of $200.00 to $295.00 (e.g., Ellen Dalton and William Houston bill at $295.00 per hour, Margaret Kohn bills at $270.00 per hour, and Brian Gruber bills at $220.00 per hour); and (2) Attorneys possessing 20 years or more in experience invoice their rate within the range of $300.00 to $350.00 per hour (e.g., Michael Eig and Matthew Bogin bill at $350.00 per hour, and James E. Brown also bills at $350.00 per hour[24]). Id. at 3.

Therefore, DCPS has determined that any billing rate of over $350.00 per hour, irrespective of the length of experience, is excessive and unreasonable, and not consistent with the prevailing market rate in the D.C. community, given that the administrative hearings are not complicated. Id. at 3.

As mentioned above, in addition to considering the prevailing market rate, Ms. Lindsey-Harris has also determined that in some cases, some attorneys bill at these rates without taking into account the simplicity of the administrative hearing at issue. Id. at 3. In such cases, Ms. Lindsey-Harris reduced the billing rate and sent the attorney a letter explaining why DCPS had reduced their billing rate. Id. at 3 and Attachment C. Ms. Lindsey-Harris sent Mr. Drake such a letter, approving a rate of $300.00 per hour, rather than his requested rate of $405.00 (note that in the present fee request, Mr. Drake seeks $425.00 per hour). Id. at Attachment C.

---

[23] Ms. Lindsey-Harris has only considered the invoices submitted to her; she has not yet had the opportunity to review the retainer agreements that these attorneys have with their clients, nor has she verified how much they charge their clients, especially in situations where they do not prevail. Defendant's Exhibit 4, at n. 2.

[24] In a July 12, 2006, Complaint filed in Abarca v. District of Columbia, Civ. No. 06-1254 (D.D.C.), the plaintiffs attached their counsel's invoice for fees and costs in an administrative proceeding (Complaint, Exhibit 1, Invoice) in which James E. Brown billed at $385.00 per hour.

Plaintiffs' Motion briefly does undertake to justify a proposed hourly rate of $425.00. Motion, at 20-22.  But for the reasons set forth earlier, that generalized pleading rhetoric does not satisfy the evidentiary requirements of <u>Covington</u>.  Moreover, no Court in this jurisdiction has ever approved the extraordinary rate being demanded here; other attorneys with Plaintiffs counsel's longevity and experience in IDEIA litigation charge far less than that demanded here; more junior attorneys do precisely the same work – with equal competence – and charge a fraction of what is requested in this case; and the Matrix was not intended as a tool for plundering the public fisc.

## D. Plaintiffs have failed to demonstrate the reasonableness of many of their specific charges.

As indicated in the above Section II, the plaintiffs bear the burden of establishing all elements of the requested fee award, including the reasonableness of individual charges.  The plaintiffs must document appropriate hours and show that the hours were "reasonably expended."  See Section II.  In the present case, the Plaintiffs fail to demonstrate the reasonableness of certain charges in that they are, for example, vague, excessive, or non-professional.  In the following sections, the Defendant will address these individual charges.

As a preliminary matter, however, the claim of M.R. should be dismissed from this case because she failed to submit *any supporting documentation* whatsoever for this claim; there is no invoice in the record.[25]  See Reply, generally.  Without an invoice, the Court simply cannot assess the reasonableness of the requested fees.  See Motion at 9 (seeking a net amount of $27,665.25 in fees and costs for M.R.).

---

[25] The Plaintiffs' counsel did not informally provide the undersigned counsel with an invoice or an HOD for this student.

**1.      Plaintiffs have failed to demonstrate the**
**reasonableness of quarter-hour billing.**

All of Plaintiffs' counsel's entries in his timesheets are based on billing at quarter

hour intervals, rather than tenth of an hour increments.  The latter, however, has been

general industry practice for many years.  Courts have found that use of quarter-hour

increments requires a reduction because it is less accurate than using tenth of an hour

increments and can potentially create a windfall for the attorney.  In Board of Education

of Frederick County v. L.S., 2005 U.S. Dist. LEXIS 2992 at *6 (D. Md., January 14,

2005), where defendant sought to recover attorneys' fees pursuant to the fee-shifting

provision of the IDEA, the court concluded that the attorneys'

> . . . practice of billing in quarter-hour increments, instead of tenth-hour
> increments, resulted in excessively high bills because even a very short phone call
> lasting only a few minutes, for example, would be billed at fifteen
> minutes….More importantly in this matter, in which a firm representing a client
> on a pro bono basis now seeks to recover attorneys' fees from a public school
> system, the most precise billing approach possible should be utilized to ensure the
> utmost degree of accuracy.

The court there reduced the fees claimed by 5%, in addition to making other reductions

"to ensure fairness."  Id.  See also Blackman v. District of Columbia, 59 F. Supp. 2d 37,

44 (D.D.C. 1999), where Judge Friedman stated directly that "[i]n the future, the Court

will not award fees where plaintiffs' counsel has not calculated his time in tenth-hour

increments."  Accordingly, where the Court does not completely disallow particular

billing entries, the Defendant requests that the Court reduce all of counsel's fees by at

least 5% for this reason, and "to ensure fairness."

**2.    Plaintiffs fail to demonstrate the reasonableness of
<u>"bi-weekly reviews," which are are excessive and vague.</u>**

Plaintiffs' counsel has itemized 729 "bi-weekly case status review[s]" in his
billing statements, specifying 182.25 hours at $425.00 per hour for a total amount of
$77,456.25 for that function.  Defendant's Exhibit 2; Reply, throughout.  In fact, in some
of the invoices, it appears that Mr. Drake did virtually nothing else with the case other
than "review" its "status" for several entries.  See, e.g., Exhibit 1, at 22-23, J.I. (20.75
hours of bi-weekly reviews where the total hours invoiced is 70.25 hours).

Each such entry is listed in quarter hour increments, and no entry reflects any
reason why the "review" was necessary, how long it actually took, or how it aided in
achieving a favorable result.  Nonetheless, Mr. Drake seeks $77,456.25 for 182.25
hours—almost 10 % of the total amount claimed in this action!  Those hours and the
amount sought should be disallowed as facially unjustifiable.  Moreover, they should be
disallowed because the entries are vague and do not explain for what purpose these "case
reviews" were performed.  But ultimately, they should be disallowed because they are
obviously meaningless, contrived entries of no substantive import, and designed only to
inflate the amount of fees claimed.  See Defendant's Exhibit 2; see also Defendant's
Exhibit 1 for a student-by student breakdown of such fees.

**3.    Clerical services and other non-professional services
<u>are not compensable at attorneys rates.</u>**

Plaintiffs' counsel has inappropriately charged (at his hourly rate of $425.00) for
various tasks that are clerical functions, not legal ones.  Nowhere in the IDEIA does it
give Plaintiffs the right to recoup such clerical costs. See <u>Lopez v. District of Columbia</u>,
<u>supra</u>, 383 F. Supp. 2d at 25.   Thus, Plaintiff is not entitled to the following:

"reading/calendaring" (e.g., J.D.); "assembling hearing notebook" (e.g., R.G.);

"assembling time sheets and bills" (e.g., M.E.); and "opening file/computer disk" (e.g.,

M.E., C.J., N.J.).

In total, the Plaintiffs have unreasonably billed 146.5 hours of such services,

which amounts to $62,262.50, and the overall fee request should be reduced by that

amount. See Defendant's Exhibit 2; see also Defendant's Exhibit 1 for a student-by-

student breakdown of such fees.

Indeed, even if some charges were permissible because counsel is a sole

practitioner, it would be patently unreasonable to approve a $425.00 hourly rate for

purely clerical activities.  The Defendant would not object to a $75.00 per hour rate for

such services.

### 4.    Many charges are for activities too remote in time, or unrelated to, the proceeding on which the charges are based.

The IDEIA permits the awarding of fees for a prevailing party's representation in

an "action" or "proceeding" brought under the statute.  20 U.S.C. §1415(i)(3)(B)(i).  The

statute does not contemplate some undefined form of ongoing representation of students

(or an ongoing hope of representing students in the future).  It quantifies the activities for

which school districts are obliged to reimburse legal representation to the administrative

process described in 20 U.S.C. §1415 – one begun by the filing of a request for an

administrative hearing, and concluding with the issuance of an administrative decision.

The claims here, however, assume that anything done by counsel at any time

concerning the student (or at least claimed to have been in the name of the student) will

somehow be reimbursable, irrespective of its temporal relationship to the administrative

proceedings provided for in the statute.  To be sure, it is not unreasonable to conclude

that, say, activities by counsel in preparation of a hearing request, or follow on advise to a client immediately after the issuance of an HOD, are acceptably related to the statutory "action" or "proceeding."  However, the claims here evidence no such restraint – the claims include activities (some undefined and meaningless) that have no temporal proximity to the "action" or "proceeding" on which the right to bees is based.

In the case of J.I., for example (Reply, at 124-134), the HOD is said to have been issued in March of 2005.  Yet there are *eighty* entries for "bi-weekly reviews" (more than $8,500.00) prior to that time, *beginning in May of 2002 – nearly three years earlier!* With respect to M.E. (Reply, at 70-86), the HOD is said to have been issued in October of 2004.  Yet there are some *sixty* entries for "bi-weekly reviews" (more than $6,000) beginning in May of 2002 – *more than two years before the hearing on which the claim is based!*  Concerning the claim of R.G. (Reply, 104-123), the HOD is said to have been issued in March of 2005.  Yet here too, there are *forty one* entries for "bi-weekly review" (more than $4,000) beginning in September of 2003 – spanning *eighteen months before the hearing on which the claim is based!*  Many other such items – similarly remote in time from the administrative process involved – are specifically identified in the objections appended hereto.

Even ignoring the clear failure of any elemental smell-test, these charges cannot properly be assumed to be part of a statutory "action" or "proceeding."  The Defendant submits that, in the absence of some extraordinary explanation detailing both what the enigmatic entry actually means and how the action directly related to the administrative proceeding relied on, these charges may not be permitted.  Choosing, as a matter of office billing practice (if that is what it was), to pick up a file with a student's name on it every

two weeks for a year in order to log a quarter hour, in the hope that at some future time it can be recouped under an administrative hearing request not yet thought of, is not what IDEIA had in mind.

Accordingly, since the billed items are too remote in time to the date of the hearing, and because there appears to be no substantive work performed on the case during the referenced time, none of the amounts charged for those periods of time should be approved.  See Czarniewy v. District of Columbia, Civ. No. 02-1496 (D.D.C. March 25, 2005), slip op. at 7.

In total, the Plaintiffs have unreasonably billed 587.5 hours in this regard, which amounts to $249,687.50, and the overall fee request should be reduced by that amount. See Defendant's Exhibit 2; see also Defendant's Exhibit 1 for a student-by student breakdown of such fees.

### 5. Plaintiffs inappropriately seek fees for entries that are vague and lack specificity.

Some of the invoice entries are so vague that they should be disallowed on this ground alone.  For example, the Plaintiffs seek fees for such vague services as: "preparation for hearing," "preparation for school visit," and "preparation for telephone conference" (e.g., M.E.).  See Mr. X v. New York State Educ. Dep't, 20 F. Supp 2d 561 (S.D.N.Y. 1998) (reducing attorney's fees by 20% for "vague or incomplete time entries"); Mr. and Mrs. B. v. Weston Bd. Of Educ., 34 F. Supp. 2d 777, 782 (D. Conn. 1999) (reducing fees by 30% "due to vagueness [] and inconsistencies"); Czarniewy v. District of Columbia, Civ. No. 02-1496 (D.D.C. March 25, 2005), slip op. at 7.

In total, the invoices include 293.5 hours of charges, which bear this deficiency. See Exhibit 2.  The total amount in this regard is to $124,737.50, and the overall fee

request should be reduced by that amount.  See Defendant's Exhibit 2; see also Defendant's Exhibit 1 for a student-by student breakdown of such fees.

**6.**     **Plaintiffs inappropriately bill for travel and waiting.**

Plaintiffs' counsel has impermissibly billed for travel time to attend administrative hearings and IEP meetings (e.g., P.N.).  "For travel time to be reimbursed, the court must have evidence that work was performed during travel."  <u>Abbot v. The Village of Winthrop Harbor</u>, 1999 U.S. Dist. LEXIS 13346, *14 (N.D. Ill.)  Here, the descriptions do not say what was accomplished (if anything) during the travel time.  Accordingly, defendant requests that these billing entries be reduced by at least 50%.  Cutting the hourly rate in half for travel time is squarely in line with the law of this Circuit.  See <u>George v. District of Columbia</u>, Civ. No. 03-1656 (D.D.C., June 8, 2004) slip op. at 12; see also <u>Cooper v. United States R.R. Ret. Bd.</u>, 24 F.3d 1414, 1417 (D.C. Cir. 1994).

Additionally, the above entries are examples of "block billing" where Plaintiffs' counsel has lumped a number of activities into one entry.  As stated previously, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  *Where the documentation of hours is inadequate, the district court may reduce the award accordingly.*"  <u>Hensley</u>, 461 U.S. at 433 (emphasis added).  In <u>Abbot</u>, <u>supra</u>, at *10-*11, the court disallowed the full amount sought where it found an entry was part of block billing.  Here, where Mr. Drake has impermissibly billed for travel time and included that time as part of an impermissible "block," the entire time billed with such descriptions as "hearing/transit/waiting" (e.g., P.N., A.I., M.W.)—which is a total of 115.75 hours, amounting to $49,193.75—should be disallowed.

30

**IV.**    **Summary of Reduction of Plaintiff's Fee Request**

The Court should reduce the overall fee request as follows (see Defendant's

Exhibit 2, which also indicates the amount in dollars):

| | |
|---|---|
| Section III, D: No Invoice for M.R. | 81.75 hours, $34,743.75 |
| Section III, A: Settlement Agreement, M.J. | 24.00 hours, $10,200.00 |
| Section III, D, 2: Bi-Weekly Reviews | 182.25 hours, $77,456.25 |
| Section III, D, 3: Clerical Charges | 145.75 hours, $61,943.75 |
| Section III, D, 4: Remote in Time | 587.50 hours, $249,687.50 |
| Section III, D, 5: Vague Charges | 293.50 hours, $124,737.50 |
| Section III, D, 6: Block Billing Travel Charges | 105.00 hours, $49,193.75 |
| Section III, D, 7: IEP Charges | 111.50 hours, $47,387.50 |

This reduced fees award amount should be further reduced to reflect a more

appropriate hourly billing rate of $300.00.

Further, reductions in costs should be made as follows:

| | |
|---|---|
| Section III, D: No Invoice for M.R. | $  139.00 |
| Section III, A: Settlement Agreement, M.J. | $   43.00 |
| Section III, B, 1: No Expert Costs, C.G. | $  150.00 |

The Plaintiffs seek a total of $2,264.00 in costs.  This amount should be reduced by

$332.00 for a new total of $1,932.00.

**V.**    **Payment of Any Fee Award is Subject to Statutory Fee Cap Limitations**.

There has been a statutorily imposed fee cap on attorneys' fees payments in the

District of Columbia's Appropriations Acts since FY-1998.  The current fee cap

provision states as follows:

> Sec. 122.
> (a)None of the funds contained in this Act may be made available
> to pay—
> (1) the fees of an attorney who represents a party in an action or an
> attorney who defends an action, including an administrative
> proceeding, brought against the District of Columbia Public
> Schools under the Individuals with Disabilities Education Act (20
> U.S.C. 1400 et seq.) in excess of $ 4,000 for that action; . . . .

District of Columbia Appropriations Act of 2006, 109 Pub. L. 115; 119 Stat. 2396 (2005).  The constitutionality of the fee cap was upheld in Calloway v. District of Columbia, 216 F.3d 1 (D.C. Cir. 2000).  See also Kaseman v. District of Columbia, 444 F.3d 637 (D.C. Cir. 2006)(administrative hearing and suit for attorneys fees are one action for purposes of IDEA).

 To that extent, payment by the District of any fee awards herein will be subject to the Congressional fee cap, and the Defendant requests that any order by the Court awarding fees herein reflect that statutory payment limitation.

## CONCLUSION

 The Defendant is keenly aware that IDEIA fees litigation may not be among the subject matters preferred by the Court.  In some instances, Judges have criticized the Defendant's objections to fees as "nit-picking" (often, the Defendant believes, unfairly).  But IDEIA attorneys' fee claims represent a demand of tens of millions of dollars annually on District funds.  And where the public fisc is involved, the Defendant has a responsibility to challenge what it believes to be unreasonable charges.

 Particularly troublesome in this case is the issue of hourly rates.  A summary reliance on the Laffey Matrix by the Plaintiffs' counsel does not satisfy the requirement for an evidentiary demonstration of the reasonableness of an attorney's hourly charge.  And Courts cannot, the Defendant respectfully submits, properly dispense with the requirement of an evidentiary showing by simply referring to a plaintiff's counsel's years in practice and the existence of the Matrix.

 This case is one which requires close scrutiny by the Court.  The demand for an hourly rate of $425.00 – the highest amount shown on the Matrix for the most

experienced attorneys of "superior achievement, expertise, skill and/or reputation" in complex federal civil litigation – for work on administrative level proceedings is clearly excessive.  There has been no showing here that that rate is appropriate or reasonable for the work done.  And simple reference to the Matrix is not a defensible substitute for a justifying evidentiary showing.

Contrary to the seeming assumption of the Plaintiffs here, the Matrix does not establish some automatic entitlement to fees – or ever higher fees – based on simple seniority.  In the complex civil litigation area for which the Matrix was intended, it is the character of the work, the skill and accomplishments of counsel, and the prevailing rates in the community for comparable services – all of which the plaintiff bears a burden of demonstrating – which determine reasonableness of rates.  And even if the Matrix grid were uncritically applied here, there are those with seniority in practice equal to Mr. Drake's whose hourly rates for the same services are far less.  Indeed, if – as is the appropriate determinant – the nature of the work is taken into account, precisely the same activities are engaged in, with comparable results, by those with far fewer years' practice, and at hourly rates a fraction of that proposed here.

The Defendant is well aware of the Circuit Court's long-standing admonition that fees matters should not become "exhaustive trial-type proceedings," Nat'l Assoc. of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1324 (D.C. Cir. 1982), and that the Defendant should not engage in "nit-picking" in its objections to fee requests, id. at 1337 (Tamm, J. concurring).  Neither is the case here.  First, the Defendant has initiated no discovery to date, the matters here are before the Court on a simple summary judgment motion schedule, and the Defendant has demanded nothing of

the Plaintiffs other than that they meet their evidentiary burdens—burdens relating to

hourly rates[26] and the reasonableness of individual charges[27] also described in the Nat'l

Assoc. of Concerned Veterans case.

_____

[26] E.g., 675 F.2d at 1325-26:

An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award. For example, affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. On the other hand, generalized "information and belief" affidavits from friendly attorneys presenting a wide range of hourly rates will not suffice. Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.

In addition, counsel for applicants should submit specific evidence of his or her actual billing practice during the relevant time period. This information, when available, will provide important substantiating evidence of the prevailing community rate. In Copeland III this Court indicated that the hourly rate allowed should reflect, among other things, the level of skill necessary to conduct the case and the attorney's reputation. 641 F.2d at 892. These, of course, are also factors that tend to determine the rate that the attorney is able to command in the marketplace for similar work. Accordingly, the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate.

It is essential to this inquiry that counsel's billing practice be accurately documented. A fee applicant should be required to state the rate at which he actually billed his time in other cases during the period he was performing the services for which he seeks compensation from defendant. This rate is not what he would have liked to receive, or what the client paid in a single fortunate case, but what on average counsel has in fact received. It is obvious that where counsel customarily exercises billing judgment by not billing for the full amount of time expended this fact must be considered in calculating counsel's true billing rate. Unless the applicant wishes the District Court to assume that applicant's individual rate claimed includes an allowance for the contingent nature of the suit, the applicant should supply data showing fees earned both in cases in which counsel prevailed and in which he lost. [Footnotes deleted.]

[27] E.g., 675 at 1327:

An applicant for attorneys' fees is only entitled to an award for time reasonably expended. Thus the fee application must also contain sufficiently detailed information about the hours logged and the work done. This is essential not only to permit the District Court to make an accurate and equitable award but to place government counsel in a position to make an informed determination as to the merits of the application.

Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney. As stated by the Court of Appeals for the Second Circuit, "any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent." In re Hudson & Manhattan R. R. Co., 339 F.2d 114, 115 (2d Cir. 1964); accord, In re Wal-Feld Co., 345 F.2d 676, 677 (2d Cir. 1965).

In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged. Copeland III recognized that the fee application need not present "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Copeland III, 641 F.2d at 891, (quoting Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)). But the application must be sufficiently detailed to permit the

Moreover, this is not a case—as Plaintiffs will not doubt assert—of immaterial "nit-picking."  Disputing a demand for $77,456.25 for undefined, repeated "bi-weekly file reviews"—some occurring a year in advance of the hearing relied on—is not nit-picking.  Challenging a demand for $61,943.75, based on a $425.00 hourly rate, for such purely clerical activities as "opening a file," "assembling documents," "assembling hearing notebooks," "reading/calendaring" and "assembling time sheets" is not nit-picking.  These are necessary efforts to blunt an assumption that the highest possible Matrix fees are the due of Plaintiffs' counsel, whatever the nature of the activity, and without the need for any meaningful justification.

For the reasons set forth above, and in the Defendant's earlier opposition, the Defendant submits that the Plaintiffs have failed to justify the amount of the award sought.  They have failed to submit evidence establishing an entitlement to the fees claimed, and have failed to establish the reasonableness of either the hourly rate demanded or the total time for which reimbursement is requested.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

---

District Court to make an independent determination whether or not the hours claimed are justified. The better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought. In any event, once the reasonableness of the hours claimed becomes an issue, the applicant should voluntarily make his time charges available for inspection by the District Court or opposing counsel on request. [Footnotes omitted.]

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
Eden.Miller@dc.gov

September 21, 2006