## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH CLARK,<br>Parent and next friend of<br>A.C., a minor, *et al.*,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 06-0439 (HHK)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

The Defendant, by counsel and pursuant to Fed. R. Civ. P. 72 and LCvR 72.3(b), submits herewith its objections to the Report and Recommendation entered herein April 17, 2008 ("Report").

### INTRODUCTION

As the Report indicates, this action is for attorneys' fees and costs under the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. §1415(i)(3)(B)(i). It is an aggregation of 40 separate claims by 26 different plaintiffs seeking, in total, more than $800,000. The Report is a proposed disposition of the claims advanced, based on a consideration of the parties' submissions, recommending an award of $389,438.44 for fees, and $2,071.00 in costs. The Report further reflects what the parties acknowledge – that DCPS' payments to counsel to date of $127,257.00 is the limit of what the Defendant is permitted to pay under the applicable Congressional fee cap on such fees and costs. Pub. L. No. 110-161, 121 Stat. 2764 (2007), Section 819.

As the record reflects, the Plaintiffs ultimately submitted invoices for each of the administrative proceedings as to which they claimed to be prevailing parties.  And in response, the Defendant submitted a comprehensive critique of each of those invoices, identifying specifically the time and charges to which the Defendant objected, and the bases for those objections.  E.g., Defendant's Response to Plaintiffs' Newly Submitted Evidence, filed September 21, 2006 ("Response").  That pleading and its detailed attachments are specifically incorporated herein by reference.

The Defendant believes that in many respects, the Report is an accurate and reasonable application of the law to the facts.  There are, however, other aspects of the Report which the Defendant believes are not an appropriate reflection of the facts in the record or the applicable law.  Recognizing courts' aversion to the welter of detail involved in an analysis of attorneys' invoices – and the record here contains hundreds of pages of such materials – the Defendant has not taken issue with many of what this Court might consider minor matters.  Rather, in the pages that follow, the Defendant has limited itself to three areas of the Report, each of which has significant consequences for the public fisc, and which the Defendant believes strongly must be altered in the Court's ultimate decision.

## ARGUMENT

**I.  Certain Proposed Awards Based on Inferences of Prevailing Party Status are Without the Required Evidentiary Foundation.**

Pages 5-6 of the Report deal with the adequacy of certain Plaintiffs' efforts to demonstrate their prevailing party status, a prerequisite to an entitlement to any fees under the IDEIA.  The Report properly states that "[i]t is the burden of the Plaintiffs to

show evidence of prevailing party status." Report, p. 5. With respect to two claims by R.W., neither a hearing officer's determination ("HOD") – the easiest and clearest demonstration of prevailing party status – nor any other official document concerning the administrative proceedings involved or their conclusion, were submitted. To that extent, having failed their burden, no fees for either matter should have been permitted.

Included among the voluminous attachments to the "Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment Awarding Attorney's Fees and Costs," filed August 26, 2006 ("Reply") were copies of billing statements dated February 13, 2005, submitted to DCPS with respect to two of R.W.'s administrative proceedings – one said to have been decided on July 9, 2003, and a second said to have been decided on August 28, 2003. Reply, pp. 285 et seq. Sandwiched in among counsel's time entries for "7-9-03" was the following: "NOTE Parent obtained some relief but no finding of denial of FAPE." Reply, p. 287. The same wording was similarly inserted among the time entries for "9-3-03." Reply, p. 290.

The Report (p. 6) quotes the invoice notation, and specifically recognizes that "Plaintiffs proffer no explanation regarding this notation … ". However, instead of disallowing all of the related fees demands, the Report simply reduced the claims "by half, from 80.5 hours to 40.25 hours, to reflect the partial success on these claims." Report, p. 6. Based on no probative evidence whatsoever.

Despite the Defendant's repeated urging that submission of the HODs as to which Plaintiffs claimed to be prevailing parties was necessary, nowhere in this record is it shown, said or known what, in fact, the HODs at issue held, what (if any) relief was granted, and the relationship of any final HOD ruling to the administrative relief sought

3

in the particular plaintiff's complaint(s).  Counsel's after-the-fact addition of words on the constructed-after-the-fact invoice is neither impartial nor probative, and there is simply nothing on the basis of which to conclude it is accurate (whatever it may mean). Moreover, the Report's gratuitous conclusion of R.W.'s "partial success" is not what even the invoice entries say, and there is no basis for concluding a "partial" grant of any specific administrative requests for relief by R.W. – there is no indication of what relief had been requested, and no demonstration of a change in the legal relationship of the parties to the proceeding.

At least three decisions in the past year have indicated that a grant of some relief in an HOD does not itself establish an entitlement to IDEIA attorneys' fees.  See, e.g., Robinson v. District of Columbia, Civ. No. 06-1253 (D.D.C., Aug. 2, 2007), slip op. at pp. 8-11; Abarca v. District of Columbia, Civ. No. 06-1254 (D.D.C., June 19, 2007), slip op. at pp. 5-7; Santamaria v. District of Columbia, Civ. No. 06-0577 (D.D.C., Feb. 7, 2007), slip op. at p. 11 (quoting Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)).  Here, there was absolutely no way for the Magistrate Judge to know either whether administrative relief had been obtained, or the character of any such relief, much less whether the legal relationship of the parties had been changed.

In sum, there was no defensible evidentiary basis for determining whether the particular claimant was a prevailing party in the administrative proceeding involved.  By the Report's own words, the burden of proof was the Plaintiff's.  And that burden was not met by the self-interested insertion of enigmatic words by counsel in an invoice. Accordingly, the Report's award should be reduced by an additional 40.25 hours – the "half" allowed in the Report – or $13,081.25.

**II.    An Award of More Than $35,000 for Unexplained**
**        "Bi-Weekly Case Status Review[s]" is Inappropriate.**

In its objections to Plaintiffs' fee claims, the Defendant noted that some 10% of

counsel's total time – some 182.25 hours, representing more than $77,000 of the initial

claims – was devoted to "bi-weekly case status review[s]."  Defendant's Response, p. 26.

> Each such entry is listed in quarter hour increments, and no
> entry reflects any reason why the "review' was necessary,
> how long it actually took, or how it aided in achieving a
> favorable result. … Those hours and the amount sought
> should be disallowed because the entries are vague and do
> not explain for what purpose these "case reviews" were
> performed.  But ultimately, they should be disallowed
> because they are obviously meaningless, contrived entries
> of no substantive import, and designed only to inflate the
> amount of fees claimed.

Id.

In addressing these objections, the Report acknowledges that "Plaintiffs bear the

burden of showing that the hours billed are reasonable and the bi-weekly case status

reviews were necessary," and that "Plaintiffs provide no explanation regarding counsel's

practice of performing bi-weekly case status reviews: i.e., what triggers such review and

what is encompassed within such review."  Report, p. 11 & n. 10.  While there were

repeated opportunities for counsel to explain what, exactly, those mechanically-repeating

entries represented, no explanations whatever were offered.  Neither were there any

explanations of the entry in any of the cases cited by the Magistrate Judge.  But the

Report nonetheless recommends that one-half of these billing entries be allowed.  Report,

p. 12.

Appended as Attachment 1 hereto is one of counsel's invoices that highlights the

issue.  It was attached to the Plaintiffs' Reply as pages 124-132, to which the Defendant's

objections were directed at pages 22-23 of Exhibit 1 to the Defendant's Response (copy appended hereto as Attachment 2).  A simple review of counsel's invoice – one not atypical with respect to the time entry involved – confirms beyond reasonable dispute that entries for "bi-weekly case status review" are simply a vehicle for unconscionably inflating charges. As will be seen, there are *83 such entries* – some dating back *three years before the HOD on which the claim relies*, and virtually *nothing else is shown to have occurred between June, 2003 and February 2005*.[1]  If nothing else, these data raise significant, unanswered questions that are inconsistent with the deference reflected in the Report's recommendation.

The Defendant will not here repeat its claim-by-claim objections to each of counsel's other invoices with respect to this invoice-padding entry; those specific objections were attached to the Defendant's Response, and are specifically incorporated herein by reference.  With due respect, the Report improperly allowed *any* such charges, much less some 95.6 hours of that unexplained  and unjustified activity.  While the Report does discount such entries "when counsel was actively working on the case and billing for that time" (Report, p. 12), the logging of such entries at times significantly removed from the administrative proceeding involved – either long before or long after – are even more suspicious.  There is simply no adequate evidentiary basis for understanding what those entries represent, much less for concluding them to be reasonable.

---

[1] See also, e.g., Plaintiffs' Reply, pp. 169-171 (an invoice supposedly relating to a December 3, 2003 HOD, which reflects 10.75 hours during the period April 21, 2004 and April 2, 2005 – 6.75 hours of which is for file review), and Plaintiffs' Reply, pp. 261-263 (an invoice reflecting 16.25 hours that includes 57 file review entries (14.25 hours) over a one year period – more than 80% of the total time billed).  Neither these nor the many similar entries in other invoices (all of which were identified in the Defendant's Response Attachments), contained any explanation or justification whatever.

**III.   <u>The Allowance of $140 per Hour for Clerical Work is Inappropriate</u>**

      In <u>Lopez v. District of Columbia</u>, 383 F.Supp.2d 18, 25 (D.D.C. 2005), it was

observed:

> This Circuit has addressed the question of whether clerical
> work is compensable and has concluded that Congress
> never intended for clerical billings to be included in
> attorneys' fees and that such services are "generally
> considered within the overhead component of a lawyer's
> fee." <u>In re Olson</u>, 280 U.S. App. D.C. 205, 884 F.2d 1415,
> 1426-27 (D.C. Cir. 1989).

In its opposition to the fees claims, the Defendant pointed out that Plaintiffs' counsel had

billed 146.5 hours to such purely clerical activities as "reading/calendaring," "assembling

hearing notebook," "assembling time sheets and bills," and "opening file/computer disk."

See Defendant's Response filed September 21, 2006, pp. 26-27 and attachments.  The

Defendant argued that such activities were not separately compensable under <u>Lopez</u> and

<u>Olson</u>, and that the requested hourly rate of $425 for those activities was grossly

improper in any event.  At the same time, anticipating Plaintiffs' counsel's claims that as

a sole practitioner he had no clerical staff, and that he should be unreasonably

disadvantaged thereby, the Defendant stated that it would not object to a $75 hourly rate

for such clerical activities.

      The Report, however, recommends that all such activities be compensated at an

hourly rate of $140. Report, p. 13.  The Defendant respectfully submits that there is no

reasonable basis for allowing such a rate for in-office clerical functions.  Indeed, the

Judge in this case elsewhere has found that such clerical activities are compensable "at no

more than $50 per hour."  <u>Coleman v. District of Columbia</u>, Civ. No. 03-0126 (D.D.C.,

May 3, 2007), slip op. at p. 5.  That clerical activities involved are performed by an

attorney does not change their character, or the propriety of their reimbursement in the usual case.

As indicated to the Magistrate Judge earlier, the Defendant would not object to an hourly rate of $75 for such activities in this case. An adjustment downward from $140 would result in a further reduction of the award by $9,815.00.

## IV.    Fee Cap Considerations.

The Report (p. 7) accurately reflects the parties' agreement (and the current state of the law) that while the Congressional $4,000-per-action attorneys' fee cap does not limit the amount of IDEIA attorneys' fees that the Court may *award*, it does limit the amount the District may *pay* on any such award. The Report also accurately reflects the parties' acknowledgment that, "[t]o date, Defendant's payments to Plaintiffs total approximately $127,000, and the amount paid by Defendant corresponds to the applicable fee cap." Report, p. 3.  In practical terms, therefore, the maximum fee cap payment(s) having already been made by Defendant, the decision herein will determine the amount of fees in excess of the fee cap – which amount may be recoverable in the future should the statutory fee cap be lifted.

In this regard, the Report expresses its ultimate recommendation in the following terms:

> [T]he undersigned recommends awarding the Plaintiffs $389, 438.44 for fees relating to administrative proceedings and $2,071.00 for costs relating to the administrative proceedings.  The undersigned notes that the fee award should be offset by the fees already paid by the Defendant, in the amount of $127,257.00: thus resulting in a fee award totaling $262, 181.44.

Report, pp. 16-17.  While the Report thus refers to two different amounts – $389,438.44

and $262,181.44 – as the proposed "award" herein, it is apparent that the second figure

was simply the mathematical result of calculating how much of the actual award remains

after crediting the maximum fee cap payment the District has already made.  To avoid

any future confusion, it should be made clear in the Court's final action that any ultimate

fee award herein is the first of those two figures, as modified for the reasons set forth

herein, and that the parties have agreed that the amount paid to date represents the limit

of what the Defendant is able to pay on the award at this time under the statutory fee cap.


Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
May 1, 2008                    E-mail: Eden.Miller@dc.gov